May it please the Court, the District Court's cursory proceedings in this case had no basis in the PLRA, the Federal Rules of Civil Procedure, or the governing case law. They reached an incorrect and unfair result in Mr. Custis' case and, if permitted, will, in other similar cases, insulate prison determinations about inmate exhaustion of remedies from any judicial oversight whatsoever. While the PLRA puts many limits on prisoner suits, it doesn't make prisons the final arbiters of whether prisoners can access federal courts. The District Court's errors here appear in two separate orders that I'd like to address in turn. Turning first to the August 2015 order wherein the District Court ordered Mr. Custis to provide exhaustion documentation, the first important point about this order is that it was inappropriate in the first place because exhaustion is an affirmative defense that the defendants need to plead and prove. But even if a sua sponte order of some kind could be appropriate, this order was not. Looking at the order itself, it's a boilerplate order, it's about fees and exhaustion, and it didn't provide Mr. Custis notice of any potential legal or factual deficiencies in his complaint, and it didn't provide him any meaningful opportunity to respond on the issue. It tells on page joint appendix 16, it tells him he can submit either the grievance documents themselves or statements about the documents themselves. That's all this order allows him to submit on the issue of exhaustion. And the problem here is that that would not reveal even the most egregious instances of a grievance process being unavailable under Blake and earlier precedent. In this case, it didn't provide Mr. Custis any opportunity to give context to his use of the grievance process, and for that reason alone, whether or not we're proceeding under a sua sponte dismissal procedure like Anderson, or whether, as we've argued in the briefs, we should just proceed under the federal rules of civil procedure, in either case, this order alone requires reversal. Second, turning to the September order, wherein the district court dismissed Mr. Custis' complaint for failure to prove exhaustion. First, this order, again, places an inappropriate burden. It says Mr. Custis, and if you look at joint appendix 24, it says, given that plaintiff's submissions do not show he fully complied with the prison's grievance procedures, dismissal is warranted, and that's just inappropriate. We know from the Jones case and from the main holding in Anderson that exhaustion is an affirmative defense. The defendants need to plead and prove. A second disorder is an error because the district court failed to consider any evidence whatsoever about what the grievance procedure at issue actually was. The grievance procedure is not in evidence in any way. It wasn't judicially noticed by the district court, and as you can see from the briefs, both sides here had to struggle to figure out how to even provide context to these documents. And by failing to even look at what the grievance procedure would have been, the district court couldn't have considered the availability of the procedure. And we know from the Supreme Court's recent Blake decision that that's an important element of an exhaustion defense in this context. And as this court noticed in Anderson and as other courts, like the Second Circuit in the Snyder case, have stated, it's a fairly obvious proposition to determine whether an inmate has exhausted the available administrative remedies, and that's the requirement. It requires an understanding of the remedies available. Here even on appeal, both sides are struggling to put before the court what the process that the plaintiff here should have, the appellant here should have followed, and the fact that those weren't even before the district court renders that the district court's dismissal order erroneous for that reason alone. Third, the district court here in this order, it doesn't specify whether it's proceeding under some kind of motion to dismiss, standing in the shoes of the defendant's process, or if it's looking at more of a summary judgment type process. Unclear, but under any of those processes, the way that it looked at the facts here was wrong because it construed such facts as existed entirely in the favor of what would be the non-moving party, presumably the VDOC defendants in this case, that looked just at what VDOC said. That's it. That's the only notation that's substantive in the district court order. It says, given that plaintiff's grievances were denied as untimely, that's it. And yet in the verified statement that Mr. Custis included in his complaint, he says, I've appealed this determination. It's very clear that this is a situation where he is contesting the prison's judgment about his use of the grievance procedure. This is exactly the kind of case where availability issues like those outlined in Blake should be considered by the district court before dismissal could possibly be proper. Unlike, for example, VDOC insists throughout their brief that this is a case where any kind of sua sponte dismissal process, if appropriate, would certainly plan because Mr. Custis admitted to failing to exhaust. And that's not a fair reading of the statements in his complaint at all because he's saying, I'm contesting what happened here. I'm trying to use this proceeding and I'm appealing their obfuscation of it. We've also pointed throughout the briefs and especially at pages 31 through 38 of our opening brief of how even looking at just the bare documents that existed during the district court proceedings here, just looking at those alone, there are numerous issues that should have raised concerns about availability and made this the kind of case where even if we're looking at some prisoner cases, this would not be one where it would be appropriate. And while we've run through a number of errors in both of these orders, I want to emphasize here that this is not a situation where it's a handful of minor errors. Taken together, what this process does is it insulates the prison's determination about prisoner use of administrative remedies from any meaningful review. While we don't have to say that there was certainly malfeasance here, we know from the There are instances where the prison itself is what's making the process unavailable. And yet under the district court's proceeding here, it just said, VDOC said you didn't do it right, that's it. That can't be the case because the PLRA, while it puts many limits on prisoner suits, doesn't make prison officials the ones who determine whether federal courts can hear prisoner complaints. Now there have been numerous concerns raised in the briefing and in other similar cases about whether district courts can handle prisoner cases like this within the rules of federal procedure. We say yes, they can. The federal rules of civil procedure include civil cases like this one. We also would submit that to the limited extent policy considerations are appropriate when looking at how PLRA cases should be handled, and we know that extent is limited because the Supreme Court told us so in Jones. It said we should not generally be reading beyond the statute just to effectuate policy concerns. To the extent that's a consideration, the actual practices of many district courts in this circuit show that it's quite possible to look at cases like Mr. Custis' through the normal rules of federal civil procedure. In such cases, prison defendants commonly can move for a summary judgment using the federal declaration from the prison official, attaching the relevant grievance procedure, and in the best practice would also be attaching information about an individual plaintiff's use of it. And district courts can also act to move quickly through these types of cases where warranted. They can raise summary judgment on their own motion and use the protections that would flow from Rule 56. And if this is a case where the face of the plaintiff's complaint somehow demonstrates all elements of non-exhaustion, which would include a general showing of availability after Blake, perhaps even a Rule 12c motion could be had from defendants. That might be possible. And looking to the guidance of other circuit courts to consider the management of these type of cases, many of the sister circuits here have explained that district courts have ample authority to order and to limit discovery so that perhaps issues of exhaustion can be addressed before a fulsome case into the merits proceeds. Those type of procedures might be appropriate and should not foreclose the basic application of federal rules to cases like Mr. Custis' Mr. Hunt, let me ask you about the process in this circuit because I think you take issue with the broader process and say that it's wrong to begin with to put the onus on the prisoner in this case to prove an affirmative defense. We have said, albeit perhaps in unpublished decisions, that that's okay so long as the court gives your client the opportunity to respond. And second, the inmate's failure to exhaust is clearly apparent from the face of the complaint. So what does that second prong mean to you and is that clearly apparent from the face of this complaint that your client failed to exhaust? Your Honor, no, it's not. What's clear on the face of the complaint is that Mr. Custis actively contested the grievance procedures that were used in this case. And that can't be the kind of case that's appropriate for screening of some kind under a parent on the face. He might have been better off saying nothing about exhaustion, right, under that test. He said nothing and it's not apparent. Well, Your Honor, I think there's actually a base problem that your question points out, which is that Mr. Custis believed he was required to use a form complaint that requires him not just to plead exhaustion but attach documents. And there are several districts in this circuit that do that. It's blatantly contrary to the Jones case and is a problem here. We don't know precisely which form he used here. Is that by local rule? In some cases, yes. And it appears from our understanding to be a requirement too. And so we'd be happy to submit supplemental briefing on that. We do think it's a base problem here. It's not a pleading requirement and so requiring an inmate to attach documentation is certainly even a step beyond that. But to your point of what that requirement means, it means that all elements of the affirmative defense would have to appear on the face of the complaint. And we believe that especially after the Blake case, but even interpreting prior cases, that includes some demonstration that the grievance process was actually available to that particular plaintiff. And so you do see instances where this situation could arise. We quoted a couple in our briefs where you have a plaintiff who says, I knew about this grievance procedure, but I didn't want to do it. I knew about it. I've done it before. I didn't want to do it this time. And so maybe in that kind of situation, you have a concession. And again, we really contest VDOC's interpretation here that what Mr. Custis did was a concession. I think it's abundantly clear that he wants to contest the grievance process that he had access to. It's a bit of a squirrelly process because it doesn't place a deadline for filing the The place is an outside deadline of 30 days to complete the process. So it kind of traps the prisoner, I think, in a catch-22. And as I recall, you alleged that because of your client's physical ailments, he wasn't able to immediately begin the process or something like that. Am I correct? Your Honor, we think squirrelly is probably a generous description of what this required from the plaintiffs. But yes, we do think, for example, we don't have evidence in the records. We can't say, oh, he was on extreme pain medications or unable to process these for X number of days. That's not here. But that's the kind of thing that is clearly established as an availability problem in case law predating Blake. And at the very least here, you needed a process that would allow him to explain that. And that's a critical thing here, is he never even had a single opportunity to describe what he thought the problem was. So, you know, we would agree that there are numerous potential availability problems. Another one we see is we don't know, because we don't have the grievance procedure, when VDOC was supposed to respond to his informal complaint or if it was even possible for him to file his regular grievance on the same day he received his informal complaint disposition. Because that's clearly queued up just on the face of the documents. So there are numerous issues here, along with his statement and his complaint, which is all that's required at this stage, that I am appealing this, I tried to appeal this determination. I didn't think the timeliness was right. We think that's enough to get past any face of the complaint issue here. So just to face, I have a bit of time left, so just to face the issue that you fronted, Your Honor, we do think that there is reason here to look back at Anderson and the whole sui sponte dismissal process as a whole. You don't have to do it to fine for Mr. Custis here, to remand the district court, because under Anderson, both of the orders here are deficient. But looking at this, Anderson borrows from pre-PLRA cases this idea that district courts can sui sponte address affirmative defenses, and it finds that chiefly on the basis of a informal pauperous case from 1995, which held that statute of limitations could be through, excuse me, sui sponte proceedings in an informal pauperous case based largely on the rationale that the informal pauperous statute asked district court to screen. But looking at the PLRA, and especially after Jones and after Blake, we know that the exhaustion affirmative defense that's granted by the PLRA is in a separate statutory provision from the screening that's granted by the PLRA. And in Jones, the Supreme Court said the fact that these are different matter. And so when you have a statute that specifically separates out the screening in this one particular affirmative defense, we don't think that these cases like Nassim and the sort would support extending that sui sponte authority to Anderson. We don't think that it's been reaffirmed as a decisive rule in a published opinion since Blake, certainly not since Jones. And we would encourage the courts to look at whether the sui sponte process is going beyond the rules of civil procedure in these cases is warranted. If the court has no further questions, I'm going to reserve my time. Thank you. Mr. McGuire. Good morning, Your Honors, and may it please the court, Matt McGuire on behalf of the Commonwealth. There are really two points I want to focus the court's attention on this morning. It's that first, after the Supreme Court's decision last term in Ross v. Blake, we now know that there are no extra textual exceptions to the PLRA's exhaustion requirement. So this case to the Commonwealth presents a very kind of narrow issue of whether or not the district court properly complied with this court's binding precedent in Anderson and Moore in dismissing Mr. Custis' complaint after giving him the opportunity to respond because the plaint showed on its face that he had improperly exhausted his administrative remedies. And then second, that applying Ross' availability factors to this case and the three circumstances laid out by the Supreme Court makes clear that dismissal was entirely appropriate here. First, this case is tailor-made to Anderson's framework based on how Mr. Custis pled his complaint. In Anderson, the court did go ahead and point out pre-Jones that exhaustion is an affirmative defense, but it took care to also make clear that district courts in a certain subset of cases could act on its own motion. And what was required were two things that Judge Diaz pointed out, which was one, that the inmate had pleaded on the face of the complaint, in effect, that the administrative grievance process was not properly exhausted and that the inmate then had been given an opportunity to respond. The Commonwealth submits that that's exactly what happened here. In his complaint, Mr. Custis attached a verified statement, and that's a JA-14 of the record. And in that statement, he said, quote, I have attempted to exhaust my administrative remedies, but my grievance was rejected as untimely. And at that moment, the court is on notice that this is not properly exhausted, at least there's a question about it. Proper exhaustion under Woodford requires compliance with the procedure's deadlines, and that's what's necessary to have kind of a fair adjudicative process in the court, in the prison situation. So here, Mr. Custis also attached all of the phases of his grievance process to his complaint. He attached his informal complaint, which is step one, he attached his regular grievance, which was step two, and then he attached his appellate letter, which was step three in here, when his grievance wasn't logged as part of the intake procedure. And his regular grievance shows really two independent failures. The first is that he was untimely under the 30-day deadline, which is referenced and laid out in full on JA-9, on the regular grievance, it says that you must file your regular grievance within 30 days of the date of the incident or occurrence. In here, Mr. Custis, his grievances are very clear on this point, and his complaint is very clear. He was grieving, and he's filed his lawsuit alleging an Eighth Amendment violation related to being housed in an upper-tier cell, which was, as he alleges, against his medical records, because he's missing several toes, I believe, on one of his feet, and he was not supposed to be housed upstairs. He was moved to that upper-tier cell, as he told the department officials, on August the 18th. Problematically, he filed his regular grievance on September the 18th, which is 31 days late. It may be regrettable that he filed one day out of time, but the fact is that that's untimely. And then the second... Well, I mean, but we don't have any evidence, other than the fact that he says that, shouldn't... I mean, there was some indication that he had some physical ailments that prevented him from perhaps complying with the deadline, and the deadlines themselves are a little bit, as I've described, squirrely, because they don't impose a deadline for the front-end filing of the informal complaint, but then have this outer limit of 30 days, which suggests that that might be problematic. Judge Diaz, I think you asked two questions there, if I can split them up. First, you started to say there was no evidence here. On JA-9, on his regular grievance, it was denied by the prison officials for being untimely explicitly under this rule that it needed to be within 30 days of the date of the occurrence. And then with respect to whether or not he was... The timeliness based on his injury, or he was unable to fully comply with the deadlines for some other reason, we pointed out that he was moved upstairs on August the 18th, which is a long time. I can't... I don't know the exact number of days between when he was moved and he fell on September the 2nd. He could have grieved that issue at any time between August the 18th and September the 2nd. The reason the part... It's not on the record why the department doesn't have an informal complaint deadline for when to file that after the incident occurs. But if we did have a date on the front end saying you have to file within five days of the incident, we would then be accused of short-circuiting it because they might have had a reason why they couldn't file within five days. What JA-10 shows is that under the informal complaint procedure, the department gets 15 days from the date of that informal complaint to respond, and that you have to file your informal complaint before you can file a regular grievance. Here the department actually responded to Mr. Custis in six days. He says in his complaint and his informal complaint to the department shows that he filed on September the 11th, they tendered him an answer on September the 17th. He now before this court wants to read in that the department like waited until the last day to come forward and provide him an answer, but that's just not indicated by the record. His informal complaint actually shows that the department gave him a crystal clear answer for why he was housed upstairs. He had asked to have his cell repaired, and the department acquiesced in that and they had to reassign him. The purpose of the reassignment given in the informal complaint is that this was the only available bottom bunk, and his medical record chart that he attached to his complaint shows that he was supposed to be housed in a bottom tier cell, bottom bunk. So the department put him in a bottom bunk, the only one available according to them was on the upper tier. What about his argument that the deadline should not have begun to run from the time that he was relocated to his cell, but rather from the time of his injury on September the 2nd? Well, Your Honor, he ties his informal grievance to the injury itself, but what he's actually grieving was the move upstairs, and so that's the event that harmed him. And from the department's perspective, it would have been in everybody's interest in this case for him to have come forward sooner to say, hey, I shouldn't be housed upstairs, my medical records are against this, because then they could have potentially taken action prior to him falling down the stairs. So he had a period of time where he could have come forward and told the department, you know, about the problem before the injury occurred. Because he's not saying that you violated my Eighth Amendment rights because I fell down the stairs, he's saying you violated my Eighth Amendment rights because I should have never been upstairs. And that move upstairs occurred much earlier than when he actually fell. And I believe he asserted that continuing injury argument could have been a footnote maybe in the reply brief. The Eighth Amendment claim, it only ripens if it comes to the level of severity for injury, doesn't it?  Well, Your Honor, if he thought that he was in a position of extreme harm, for example, like he really is a fall risk, he should have never been upstairs, and the department was unwilling to meet him, he could have sought preliminary injunctive relief after seeking a grievance on that. I mean, there are just injunctive measures you could have taken. He didn't have to wait to suffer some sort of extreme harm here as he allegedly suffered, you know, back injuries and other things from the fall down the stairs. But then you'd be arguing that, well, you don't have a right, there's no constitutional right to a tier. We have the argument, and you weren't injured, so he can't win, because then you say, oh, no, all you're doing is just, that's not, that doesn't rise to the Eighth Amendment, because you agree there's no right to a certain tier floor constitutionally, correct? Your Honor, what we would say is that an inmate, we're not going to protest that an inmate doesn't have the right to have their medical directives followed to, you know, if the doctors have said you should not be, have certain things done to you or you've taken some action that's inconsistent and put them at a severe risk, the department is not going to come and contest and say, well, you don't have the right to have your medical directives followed. We might, Your Honor, very well say you don't have the right to be assigned to a particular tier, but if that assignment is based on an actual physical problem or an ailment or there's a medical reason why you can't be housed a certain way, that could certainly state an Eighth Amendment claim. Now, if I've answered Your Honor's question. Well, I've seen a lot of Eighth Amendment cases come through here, people sleeping on the floor and all kinds of things that I don't know, and indications you need a hernia operation. I'm not sure that's severe enough. I mean, so it's, on one hand, now you said Eighth Amendment is full flung and fully mature just because he's a tier problem on what floor he's on, but isn't it a better starting point when he actually has a severe fall as a result? Your Honor, from the department's position, there is no incentive for department officials to prevent him from using the grievance process, to encourage him to fall down the stairs before fixing the problem. It is in everybody's interest to resolve these issues at the prison facility. They would rather not be in federal court or have an inmate who's now suffered some other additional injuries. It would have been on everybody's interest to have had this raised earlier. If I may return back to the Anderson framework, once it was clear to the district court that this had been improperly exhausted for two different reasons, the second that I don't think I mentioned was just that his appellate, you have five days to appeal the refusal to intake your grievance. He mailed it to the wrong address. We agree with him that the address for the regional ombudsman is not in the record other than as part of the procedure here, but we would submit to the court that in the future Not only not in the record, but there's another address in the record which tends to be a bit misleading. That address comes out of the more recent Operating Procedure 866.1. There are two different ombudsmans. We admit that it's confusing. The better process for the court would be to focus on the one day that's clearly untimely. He's supposed to know what the right address is for the regional ombudsman. Your Honor, it's not in the record, but we would submit to the court that it would likely come out later, that it's posted at the facilities. There are usually drop boxes for these things. There are grievances all around Virginia prison facilities. They try to make this as easy as possible for inmates to grieve issues. There is no gamesmanship here that would come out on a remand. But as the record stands now We don't know, Your Honor. So how do you get around that? I mean, the fact that you called time on him and you didn't tell him, there's no evidence you showed him who to write or where to write. Until his informal brief in this court, Your Honor, he himself never said he didn't have that correct address. He made a mistake in mailing it to the wrong one, but I believe there's only one sentence Didn't have pretty good evidence he didn't have the right address? People make mistakes, Your Honor. I mean, he could have just overthought this and made a mistake. Clearly, there are two addresses. There is the regional ombudsman in Richmond is a level three address that goes for things like RLUIPA claims or some of the Where did he get that address from? Where could he have gotten it from? Well, from the operating procedure 866.1 has that address in it. So it's got, I guess, the local ombudsman, but it doesn't have a name and address, but not the regional ombudsman. Well, so the one he sent it to is more of the statewide ombudsman office. The procedure has the statewide, the level three appellate office. It does not contain Sounds like a bit of a shell game with respect to these addresses. Well, Your Honor, again, we would say he could have said all this to the district court. The district court gave him an opportunity on August the 17th in an order that said, we're going to dock at your complainer in the PLRA, but you need to come forward and show exhaustion. And that's entirely appropriate in light of the fact that his complaint facially shows that he wasn't, he had not exhausted. And it said that he could make statements or anything about the grievance process as part of that response. He just resubmitted his grievances. And we'll admit it's not a high bar here. As Your Honor pointed out in one of your earlier questions, under Jones, he could have said nothing about exhaustion. It is an affirmative defense. Apparently the local rules don't allow him to say nothing. He's got to attach some proof of exhaustion from the get go. Well, Your Honor, there are form complaints that both the Western District and the Eastern District use. They do not come from the Department of Corrections. And we have this complaint to take at face value of what he has filed. And here it's, as he points out, it's not clear exactly which form complaint he used. It's maybe a hybrid of the two. It's just a ballpark of what he thought he needed to plead to be in federal court. And unfortunately here, he did plead exhaustion even though he wasn't required to under Jones. And I want to make one point about Jones because it doesn't undercut the Anderson framework at all. Jones agrees with Anderson that this is an affirmative defense. But in Jones, the court goes on to talk explicitly about the statute of limitations defense as an example of why you can dismiss before summary judgment. Chief Justice Roberts points out that you could have a statute of limitations bar pled on the face of the complaint. And if that happens, it is obviously open to being dismissed for failure to state a claim. And he says that right in Jones. And that is effectively what happened here. He pled on the face of his complaint that it was unexhausted or improperly exhausted. The district court asked him to come forward and show that he had, in fact, complied with the mandatory exhaustion requirement. He didn't do so. And then they dismissed the complaint. On the second point about DeRoss' most three recent availability factors, I think it's important to step back and note that Ross really did two things. The first is it made absolutely clear that proper exhaustion is required and that there is only one textual exception to the PLRA's exhaustion requirement, which is availability. Availability has been in the statute for a long time. And inmates, as this Court is fully aware, raise it frequently in a variety of contexts. But Ross took pains to point out three specific sort of instances where you can see sort of the hallmarks of the availability problem. And one, the second factor in Ross is the one I want to start with, which is whether the procedure was so opaque as to be incapable of use. That clearly can't be the answer here because Mr. Custis used all three phases. He filed his informal complaint. He submitted the grievance with all the material filled out. He just submitted it too late. And he tried to submit the appeal. He just made mistakes. And Ross allows for mistakes. It says there are going to be cases where inmates make mistakes that doesn't rise to the level of unavailability. Then with respect to the first prong going back, that is whether or not officials were quote, unable or consistently unwilling to provide relief. He never made any allegation to that effect to the District Court. And if you look at what is in the record here, the informal complaint shows that the Department officials were actually trying to provide him information. They gave him a very fulsome response to why he had been housed upstairs. By the time he had fallen, it was too late for them to really take any corrective action. It says that he was reassigned as soon as his cell was repaired. But you know, by the time that the fall occurred, it was obviously too late for them to do anything. Then the third factor in Ross is really whether or not prison officials tried to thwart his attempts to use the grievance process or otherwise, you know, say they engaged in bad faith. And there's just again no evidence at all from Mr. Custis, no assertions, no argument that they did that to the District Court. Indeed, there is a presumption of regularity that generally speaking applies to state officials, including prison officials, where the court legally presumes that they discharged their official duties properly in the absence of some evidence to the contrary. And so although the record is not fulsome in this case, there's no reason to read any ambiguity against the state officials when he didn't raise any assertion below. So to conclude, 11 years ago, this court held that dismissal of an inmate's complaint at initial matter is proper on the court's own motion when the inmate pleads on the face of their complaint that they have improperly exhausted their administrative remedies as long as the inmate is given an opportunity to respond. And that's exactly what happened in this case. The District Court fully complied with that process. And for that reason, the District Court should be affirmed. Unless the court has any other questions, I will cede the remainder of my time. Thank you, Mr. McGuire. Ms. Hutton, you have some time. Thank you, Your Honor. A few brief points in rebuttal. First, all of the factual questions that the court asked VDOC's counsel here are the kinds of questions that if this court wants to know, then the District Court should have wanted to know them, and they should have come out in that proceeding below. Where VDOC states that Mr. Custis could have provided information about the availability of the grievance process to him, we submit that's false. The only order in this case allowing him to submit anything told him exactly what he could submit, and it was the grievance documents or statements describing those documents. There was no opportunity any time in this case for him to submit an explanation that might go to availability or otherwise describe the circumstances of his grievance. Second, as this court pointed out, there isn't an address in the grievance procedure. And counsel's statements about the fact that it's posted somewhere or there's a drop box for it, those are exactly the type of things that should come out in a response of pleading or as evidence attached to a motion for summary judgment, because that's the kind of evidence only the defendants in this case actually have. Certainly Mr. Custis would then perhaps have to explain if there were individualized availability issues that applied to him, because some availability problems are individual, but at minimum that type of generally applicable information about the grievance procedure should be before the District Court before it can dismiss a case like this. Second, if that address doesn't exist, then this is exactly the case that the Supreme Court discussed in Blake under the prong that no reasonable prisoner could have used it. If the address isn't there, you can't send the appeal. It's not a matter of diligence. It's not a matter of intelligence. It's just not possible. Second, or excuse me, I think I'm on to three now. Just may I ask you a question? Yes. What would have been the defense as to availability as to the 31-day, the one-day-late aspect of it? Potentially, had there been more factual development, there could have been information about when Mr. Custis actually received that disposition. We know it was dated for the same day he allegedly had to return it into a regular grievance, whether he got it back at a timely fashion on that date, whether it was delivered to him, whether he had time or access to it. I think it was based on when he was moved to the tier. Oh, excuse me. I'm not sure I understand the question. But it's like, you know, the time that Mr. McGuire said, the time that he should, the clock should have stopped running when he was moved to the upper tier. And then he's saying it was 31 days. He had 30 days in which to resolve it. Isn't that what he, Mr. McGuire, argued? Yes, Your Honor. First, we think that VDOC, that interpretation of their policy is not necessarily apparent from the documents provided and would better be found in the operating procedure. Second, we think a continuing injury theory could be appropriate. Third, the version of the operating procedure that we have cited discusses an obligation for inmates to try to resolve their complaints informally before even filing an informal complaint. So, all of these things. And you'll see in his letter to the regional ombudsman, he actually states, I've tried to make this known. I've tried to get it fixed, but it fell on deaf ears. And so, the grievance procedure, if we're going to characterize it the way opposing counsel has, maybe it's to get everything resolved or maybe it's to require the plaintiffs to try to get things resolved before they even go through this procedure. So, what are you asking us to do? To vacate remand for more fulsome consideration of availability under Blake? Yes. Okay. Go ahead. Go ahead. Your Honor, I have one more point I'd like to make, which is that we're, as a factual matter, we're opposing counsel has characterized this idea that VDOC responded immediately to Mr. Custis' need as soon as they were notified of it. We do contest that characterization. What you can see from the face of the response to his informal complaint, in fact, is VDOC saying, well, we assigned you, because you made a request of us, which may even raise an inference of retaliation of some kind, because you asked for a repair, and it could have been his entire cell was molded and flooded, could have been a really serious need, who knows. But because you asked for that, we moved you to the nearest or the available bottom-tier bunk. But the medical order says he needs, or excuse me, it said we moved you to a bottom bunk. But the medical order is for a bottom-tier cell with a bottom bunk. So it's actually facially apparent, and it's apparent from the facts here that his need to not go up the stairs, which resulted in an injury, was not addressed through the informal complaint process. So it is hard to accept the characterization that somehow his cause of action started, his timing started 30 days earlier. All right. If the Court has no further questions. Thank you. Thank you, Ms. Sutton. We also note that you are a court opponent, and we thank you so much for your service. And the Court depends upon those types of services. And also, Mr. McGuire, thank you for representing the Commonwealth very ably. We'll come down to Greek Council and proceed to our final case for the day. Thank you.
judges: Roger L. Gregory, William B. Traxler, Jr., Albert Diaz